UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CALIFORNIANS FOR ALTERNATIVES
TO TOXICS, a non-profit
corporation, et al.,

NO. CIV. S-05-1502 LKK/JFM

       Plaintiffs,

  v.                                    O R D E R

UNITED STATES FOREST SERVICE,
et al.,

       Defendants.
_____/

    Plaintiffs Californians for Alternatives to Toxics, Forest
Issues Group, California Native Plant Society, California Indian
Basketweavers Association, Sierra Club -- Mother Lode Chapter,
Sierra Foothills Audubon Society, and South Yuba River Citizens
League (collectively, "plaintiffs") have filed a motion for
attorney fees, costs, and other expenses under the Equal Access to
Justice Act, which they allege they incurred in a civil action
against defendants Steven Eubanks, Sam Wilbanks, and United States

1

1  Forest Service (collectively, "defendants"). Plaintiffs seek an
2  award of $137,616 for attorney fees and $2,738.43 for costs.

3       For the reasons set forth below, the plaintiff's motion is
4  granted in part. The court awards plaintiffs $129,837.18 in fees
5  and costs.

6                          **I. Procedural History**

7       In July, 2005, the plaintiffs brought suit against the United
8  States Forest Service and related defendants pursuant to the
9  National Environmental Policy Act, 42 U.S.C. § 4321, et seq,
10 National Forest Management Act, 16 U.S.C. § 1600, et seq, and the
11 Administrative Procedures Act, 5 U.S.C. § 701, et seq.
12 Specifically, the plaintiffs challenged the Environmental Impact
13 Statement and Record of Decision that the defendants had issued,
14 which addressed the reforestation of the Cottonwood burn area of
15 the Tahoe National Forest. The plaintiffs sought declaratory
16 judgments that the defendants violated these statutes and an
17 injunction barring the defendants from implementing the project
18 described in the Environmental Impact Statement and Record of
19 Decision (the "Cottonwood Project").

20      In September, 2005, the court ordered the relating of this
21 action with the case numbered S-00-2016 LKK/JFM. In January, 2006,
22 the court issued an order requiring that motions for summary
23 judgment be filed no later than May 5, 2006. On May 3, 2006, the
24 parties stipulated to continue the briefing schedule to permit
25 opening briefs for motions for summary judgment be filed no later
26 than June 16, 2006.

1    On June 15, 2006, the defendants filed a request to suspend

2  further briefing and hold the case in the abeyance, based upon a

3  recent decision issued by the Ninth Circuit. The defendants

4  contended that <u>Earth Island Institute v. United States Forest

5  Service</u>, 442 F.3d 1147 (9th Cir. March 24, 2006), "impose[d]

6  burdensome   new   requirements   for   monitoring   populations   of

7  'management indicator species'" and that the Environmental Impact

8  Statement and Record of Decision at issue in the present case did

9  not comply with the requirements of <u>Earth Island Institute</u>. The

10 defendants   described   <u>Earth   Island   Institute</u>'s   holding   as

11 unanticipated and wrongly decided, and informed the court that the

12 United States Forest Service had filed a petition for rehearing en

13 banc in <u>Earth Island Institute</u>.[1] Finally, the defendants stated

14 that   "[i]n   the   meantime,   the   government   will   refrain   from

15 implementing the challenged decision."

16   A few hours after the defendants filed their motion, the

17 plaintiffs filed a response. The plaintiffs contended that <u>Earth

18 Island Institute</u> did not necessitate an abeyance in the present

19 case, but if one was granted, the court should enjoin defendants

20 from implementing the Cottonwood Project Record of Decision.

21   The next day, the court ordered that the present case be

22 stayed until appellate proceedings in <u>Earth Island Institute</u> were

23 concluded. Additionally, the court enjoined the defendants from

24 ─────────────────
25   [1]  That petition was subsequently denied. Petition for
   certiorari was later denied as well. <u>United States Forest Service
26 v. Earth Island Institute</u>, __ U.S. __, 127 S.Ct. 1829 (March 19,
   2007).

1   implementing the Record of Decision while the case was stayed. The
2   court explained that its ruling was based on the parties' briefing.
3       On May 4, 2007, the United States Department of Agriculture
4   withdrew the challenged Record of Decision in this case. In a joint
5   status report filed with this court on May 10, 2007, the parties
6   stated that "[i]n defendants' view, withdrawal of the challenged
7   decision renders this case moot. . . ." On July 3, 2007, the court
8   dismissed the complaint pursuant to a stipulation by the parties.
9       Plaintiff now seeks attorneys' fees under the Equal Access to
10  Justice Act, 28 U.S.C. § 2412(a)-(d).

**II. Standard**

12      Under the Equal Access to Justice Act, a court "shall award"
13  attorney fees, costs and other expenses to a "prevailing party" in
14  a civil action "brought by or against the United States in any
15  court having jurisdiction of that action, unless the court finds
16  that the position of the United States was substantially justified
17  or that special circumstances make an award unjust." 28 U.S.C. §
18  2412(d)(1)(A).
19      In the absence of a statutory definition, a plaintiff is a
20  "prevailing party" for purposes of the EAJA if he or she
21  "succeed[s] on any significant issue in litigation which achieves
22  some of the benefit the parties sought in bringing suit." See
23  United States v. Real Property Known as 22249 Dolorosa Street, 190
24  F.3d 977, 981 (9th Cir. 1999) (internal citations and quotation
25  marks omitted). A plaintiff is not entitled to attorney fees, costs
26  and other expenses in a civil action against the United States,

4

despite satisfying the "prevailing party" test, if the government, bearing the burden of proof, demonstrates that its position "was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); see Barry v. Bowen, 825 F.2d 1324, 1330 (9th Cir. 1988).

### III. Analysis

Plaintiff requests $140,354.43 in attorneys' fees and costs. For the reasons discussed herein, the court awards plaintiffs $129,837.18.

**A.   Prevailing Party**

A party is a prevailing party if it "succeed[ed] on any significant issue in litigation which achiev[ed] some of the benefits" it sought in bringing suit. National Wildlife Federation v. Federal Energy Regulatory Comm'n, 870 F.2d 542, 544 (9th Cir. 1989). The plaintiff's success must not solely derive from the defendant's voluntary cessation of its conduct. Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health, 532 U.S. 598 (2001). Instead, there must be a "judicial imprimatur" that changes the legal relationship of the parties. Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir. 2002).

Defendants contend that obtaining an enforceable judgment on the merits or a court-ordered consent decree are the only means of becoming a prevailing party. The Ninth Circuit expressly rejected this argument in Watson. See 300 F.3d at 1096. There, the plaintiff had sued his county employer for due process claim, some of which related to a report his employer required him to write. Id. at

1094. The plaintiff sought and was granted a preliminary injunction against the use of the report in an administrative hearing against him. Id. Later, his prayer for injunctive relief became moot when his administrative hearing occurred, so the court dismissed that cause of action. Id.

Although the plaintiff only obtained relief in the form of a preliminary injunction that later became moot, this sufficed to render the plaintiff the prevailing party. Id. at 1095-96. By obtaining a preliminary injunction, he had prevailed on some of his claims. Id. at 1095. The court rejected the argument that Buckhannon, 532 U.S. 598, required a judgment on the merits or a consent decree in order for a plaintiff to be considered a prevailing party. Id. at 1096. Consent decrees and rulings on the merits were simply examples of court actions that would satisfy the standard. Id.; see also Buckhannon, 532 U.S. at 605 (characterizing a judgment on the merits and a consent decree as "examples" of what may confer prevailing party status).

Watson further demonstrates that a plaintiff may be a prevailing party if his claim later becomes moot. See 300 F.3d at 1096; see also Williams v. Alioto, 625 F.2d 845, 847 (9th Cir. 1980)(holding the plaintiff was a prevailing party after obtaining a preliminary injunction, although his claims later became moot). The Watson court distinguished this situation from one where the plaintiff prevails on the preliminary injunction but loses on the merits later. Id. In the latter, the plaintiff could not properly be considered a prevailing party. Id.; see also Sole v. Wyner, __

1  U.S. __, 127 S. Ct. 2188 (June 4, 2007)("[p]revailing party status,
2  we hold, does not attend achievement of a preliminary injunction
3  that is reversed, dissolved, or otherwise undone by the final
4  decision in the same case").

5      Finally, a preliminary injunction carries "judicial
6  imprimatur" sufficient to establish prevailing party status, even
7  where the defendant voluntarily agreed to refrain from the behavior
8  at issue. In comparable situations, the Ninth Circuit has
9  repeatedly held that a court action "materially alter[s] the legal
10 relationship between the parties, because the defendants were
11 required to do something directly benefitting the plaintiffs that
12 they otherwise would not have *had* to do." Richard S. v. Department
13 of Developmental Services of the State of California, 317 F.3d
14 1080, 1087 (9th Cir. 2003)(legally enforceable settlement
15 agreement; italics supplied); see also Fisher v. SJB-P.D., Inc.,
16 214 F.3d 1115, 1118 (9th Cir. 2000)(same); Carbonell v. I.N.S., 429
17 F.3d 894, 900-901 (9th Cir. 2005)(court-ordered stay of
18 deportation, after stipulation by both parties). Although one party
19 or both may agree to a course of conduct, the legal relationship
20 between them is not changed until the court has mandated it through
21 some action of its own. See Carbonell, 429 F.3d at 901. Once that
22 occurs, there has been the "judicial imprimatur" necessary for
23 prevailing party status. See id.

24     Here, the plaintiffs have demonstrated that they were the
25 prevailing party in their action against defendants. They achieved
26 the results they sought, in obtaining an injunction against the

7

1  defendants' use of the Record of Decision and Environmental Impact
2  Statement at issue. This victory was not undone by a later adverse
3  ruling on the merits. See Sole, 127 S. Ct. 2188. Though the
4  plaintiffs' claims were later mooted by the withdrawal of the
5  Record of Decision and Environmental Impact Statement, under this
6  circuit's precedent, I conclude that the subsequent mooting of
7  plaintiff's claims does not nullify the plaintiffs' victory in
8  obtaining the preliminary injunction. See Watson, 300 F.3d at 1096;
9  Williams, 625 F.2d at  847.

10  In the court's order of June 16, 2006, the defendants were
11  enjoined from implementing the contested Record of Decision while
12  the case was stayed. This action by the court sufficed to give a
13  judicial imprimatur to the changed legal relationship between the
14  parties. See Richard S., 317 F.3d at 1087; Carbonell, 429 F.3d at
15  900-901. Although the defendants had indicated they voluntarily
16  would refrain from implementing the record of Decision while
17  appellate proceedings in Earth Island Institute were pending, such
18  a position is of no moment to the prevailing party analysis. The
19  court's injunction required an action from the defendants that they
20  otherwise were not required to perform. See Carbonell, 429 F.3d at
21  900-901. Consequently, the plaintiffs were the prevailing parties
22  in their action.

23  **B.   Injustice of Awarding Fees**

24  A prevailing plaintiff should ordinarily recover attorneys'
25  fees unless special circumstances would render such an award
26  unjust.  28 U.S.C. § 2412(d)(1)(A); Barrios, 277 F.3d at 1134.

8

1    Here, defendant argues that the awarding of fees would be unjust
2    because the plaintiff "led this court into error" in the issuance
3    of the June 16, 2006 preliminary injunction. The court cannot
4    agree.

5         At the time of the issuance of the injunction, the court had
6    before it defendants' request for an abeyance, in which defendants
7    informed the court that a recent Ninth Circuit decision had made
8    unlawful the Record of Decision at issue in the instant case.
9    Furthermore, the Ninth Circuit has characterized the decision to
10   issue a preliminary injunction as a sliding scale analysis, whereby
11   the district court consider the plaintiff's likelihood of success
12   on the merit and possibility of irreparable harm. See Earth Island
13   Institute v. United States Forest Service, 351 F.3d 1291, 1297-98
14   (9th Cir. 2003). An injunction may issue where plaintiffs have
15   shown "*probable* success on the merits and the *possibility* of
16   irreparable harm." Id. at 1298 (italics in original). In a case
17   such as this, where defendants themselves indicate that the
18   plaintiffs were extremely likely -- if not certain -- to prevail
19   on the merits, the issuance of the preliminary injunction was
20   proper.

21        Moreover, the court observes that the defendants sought no
22   redress for the preliminary injunction that they now contend was
23   erroneous. Defendants neither moved for reconsideration nor
24   appealed to the Ninth Circuit. As such, it would not be unjust to
25   award attorneys' fees in this case, based upon the issuance the
26   preliminary injunction that favored the plaintiffs. See Select Milk

1  <u>Producers, Inc. v. Johanns</u>, 400 F.3d 939, 950 (9th Cir.
2  2005)(holding that "it is not somehow unfair here to conclude that
3  [the plaintiffs] were the prevailing parties when the Government
4  voluntarily forfeited its right to appeal the injunction. . . .").
5  **C.   Substantial Justification for Defendants' Position**
6      The court should not award attorneys' fees, costs, and
7  expenses if it finds that the position of the United States was
8  substantially justified. 28 U.S.C. § 2412(d)(1)(A). A position is
9  substantially justified if it has a reasonable basis in both law
10 and fact. <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). This
11 determination turns on whether the government was substantially
12 justified either in taking its original action or in defending that
13 action in court. <u>Kali v. Bowen</u>, 854 F.2d 329, 332 (9th Cir. 1988);
14 <u>United States v. Marolf</u>, 277 F.3d 1156, 1164 n. 5 (9th Cir. 2002).
15 The defendant bears the burden of proof on this issue. <u>Flores v.</u>
16 <u>Shalala</u>, 49 F.3d 562, 569-70 (9th Cir. 1988).
17      Here, plaintiffs argue that defendants were not substantially
18 justified in their position because they approved the Cottonwood
19 Project without having complied with established monitoring
20 requirements for the Tahoe National Forest. Plaintiffs, therefore,
21 refer to the first alternative of <u>Kali</u>'s rule, that the defendants
22 were not substantially justified in their "original act," which had
23 formed the basis of the plaintiffs' claim. <u>See</u> 854 F.2d at 332. As
24 explained below, the court agrees with plaintiffs' position.
25      The monitoring requirements to which the plaintiffs refer are
26 those contained in Appendix E of The Sierra Nevada Framework Plan

1  Amendment ("2001 Framework") and re-adopted in the 2004 amendment

2  to the 2001 Framework. Both Frameworks are comprehensive forest

3  plans for the national forests in the Sierra Nevada Mountains,

4  which includes the Tahoe National Forest. See Earth Island

5  Institute v. United States Forest Service, 442 F.3d 1147 (9th Cir.

6  2006). Appendix E of the 2001 Framework lists Management Indicator

7  Species (MIS) that may be present in "old forest ecosystems" and

8  indicates which of these species it is expected will be monitored

9  for population levels. See Supplemental Declaration of Rachel Fazio

10  in Support of Plaintiffs' Motion ("Fazio Supp. Decl.") Exh. 3.

11       The crux of defendants' argument is that it was not until the

12  Ninth Circuit's decision in Earth Island Institute that the

13  defendants learned that Appendix E's monitoring requirements were

14  mandatory. In Earth Island Institute, 442 F.3d 1147, the Ninth

15  Circuit held that the 2001 and 2004 Frameworks, as well as the

16  governing federal regulations, command the Forest Service to

17  monitor population levels of MIS. Id. at 1173-76. Furthermore, it

18  held that the Forest Service acted arbitrarily and capriciously,

19  under the Administrative Procedures Act, in relying on an

20  alternative source for this data. Id. at 1176.

21       The Ninth Circuit based its holding on several considerations.

22  First, the 2001 Framework plainly states that "population and/or

23  habitat monitoring will be conducted for all MIS and species at

24  risk." Id. at 1173. The Framework goes on to describe the very

25  limited circumstances where habitat monitoring can replace

26  population monitoring. Id. Second, Appendix E of the 2001 Framework

11

1    "makes explicit" that population data must be collected for certain

2    species. Id. Third, the regulations that apply to the 2001 and 2004

3    Frameworks clearly required population monitoring. Id. at 1173; see

4    36 C.F.R. § 219.

5         The Earth Island Institute court discussed with approval Judge

6    England's holding in Sierra Club v. Eubanks, 335 F. Supp. 2d 1070

7    (E.D. Cal. 2004). There, the government had contended that, under

8    the Tahoe Forest Plan, the Forest Service need not monitor

9    population levels so long as it concludes that the MIS's habitat

10   would not be adversely affected by the contested action. Eubanks,

11   335 F. Supp. 2d at 1081. The court held that annual population

12   monitoring was required for the MIS listed in Appendix E and which

13   had check marks next to them, denoting the specific type of

14   monitoring. Id. The court also held that habitat analysis can

15   replace population data in some limited circumstances, and, after

16   finding that the government had not shown that there had existed

17   adequate habitat data at the time of the Forest Service's action,

18   the court granted a preliminary injunction against the defendants.

19   Id. at 1802.

20        The Earth Island Institute court stated that the defendants'

21   argument in that case suffered from the same deficiency as that in

22   Eubanks, in that the data describing habitat monitoring was

23   inadequate. 442 F.3d at 1175. Habitat monitoring can only replace

24   population monitoring where the Forest Service shows that it had

25   "(1) consulted field studies showing how many acres of territory

26   an individual species needed; (2) assumed that the amount of

1  acreage remained constant no matter the actual size of the

2  individual species' territory; and then (3) examined the proposed

3  alternatives to see how many acres of necessary habitat remained

4  after the timber was harvested." Id. (citing Inland Empire Public

5  Land Council v. United States Forest Service, 88 F.3d 754 (9th Cir.

6  1996)). The court held that the defendants had not met this

7  standard for replacing population data with habitat data. Id.

8      Under the circumstances, this court is not persuaded that

9  defendants' position was substantially justified. The

10 administrative record shows that defendants had failed to monitor

11 MIS population levels, as required by Appendix E of the 2001

12 Framework. See AR 4432 (discussing Forest Service's response to

13 Plaintiffs' inquiries that monitoring has not occurred since 1996

14 and, even in 1996, the Forest Service had performed no population

15 monitoring for fourteen of thirty-two MIS); AR 3720 (no population

16 data for blue grouse); AR 3718-19 (no population data for mountain

17 quail).[2] The defendants have directed the court to nothing in the

18 administrative record showing that the Forest Service has complied

19 with the Appendix E monitoring requirements, and the court's

20 independent review of the record has likewise yielded nothing

21

22      [2] It should also be noted that there are species, Sierra
    Nevada Snowshoe Hare, White-tailed Hare or Mountain White-crowned
23  sparrow (either MIS or Species at Risk (SAR)), which were
    referenced in Plaintiffs' Complaint, which are designated in
    Appendix E as requiring monitoring (see Plaintiffs' Supp. Fazio
24  Decl., Ex. 3, Appendix E, p. 64, Table E-9; p. 99, Table E-11), for
    which habitat exists and which would be affected by the Cottonwood
25  project, and which the Cottonwood FEIS failed to mention, let alone
    provide monitoring data for. See AR 3600-04 (Cottonwood Wildlife
26  Biological Evaluation); AR 3691-92 (MIS Report).

1  demonstrating that the Forest Service has complied with these
2  requirements.

3       Defendants contend that it was not until the Ninth Circuit's
4  decision in Earth Island Institute, 442 F.3d 1147, that it learned
5  that Appendix E's monitoring requirements were mandatory.
6  This decision, however, did not announce a surprising new
7  proposition of law, but rather based its holding on the long-
8  established rule that an agency must follow the plain language of
9  the regulations and rules binding it. See Earth Island Institute,
10 442 F.3d at 1173; see also Wilderness Society v. Babbitt, 5 F.3d
11 383, 388 (9th Cir. 1988)(holding that, under the EAJA, a government
12 action could not be considered substantially justified when the
13 action was contrary to the plain language and clear direction of
14 the law). The Ninth Circuit concluded that the 2001 Framework, 2004
15 Framework, and 36 C.F.R. section 219 explicitly require population
16 monitoring of MIS. Id.; see also Eubanks, 335 F. Supp. 2d at 1081.
17 The administrative record in the present case shows that the
18 defendants did not comply with these requirements.

19      Furthermore, the court is not persuaded that the defendants
20 were substantially justified in believing that theirs was one of
21 the limited situations where habitat data could be reported in lieu
22 of population data. Defendants contend that Island Empire, 88 F.3d
23 754, permits the Forest Service to report habitat data as a proxy
24 for population monitoring data. However a key distinction between
25 Island Empire and the present case is that, in Island Empire, there
26 were no requirements for MIS monitoring in the regulations at issue

14

1  there. See 88 F.3d at 758-63. Additionally, the defendants have not

2  shown that, even if habitat monitoring would have been acceptable

3  in lieu of Appendix E's population monitoring requirements, the

4  habitat data that the Forest Service relied on here met Island

5  Empire's standard. See id. at 759; Earth Island Institute, 442 F.3d

6  at 1175 (describing Island Empire's rule).

7      In sum, the defendants' position in this action was not

8  substantially justified, and the plaintiffs are therefore entitled

9  to attorneys' fees, costs, and expenses under the Equal Access to

10 Justice Act.

11 **D.   Calculation of a Reasonable Fee**

12     The starting point for calculating the amount of a reasonable

13 fee is the number of hours reasonably expended multiplied by a

14 reasonable hourly rate. See Hensley, 461 U.S. at 433.

15     **1. Reasonableness of Hourly Rate**

16     Under the EAJA, attorneys' fees are award at an hourly rate

17 of $125, unless the court determines a cost-of-living increase or

18 "a special factor, such as the limited availability of qualified

19 attorneys for the proceedings involved" warrant a rate increase.

20 28 U.S.C. § 2412(d)(2)(A). A "qualified" attorney is one who

21 possesses "some distinctive knowledge or specialized skill needful

22 for the litigation in question." Pierce v. Underwood, 487 U.S. 552,

23 572 (1988). An attorney with an identified practice specialty meets

24 this standard. Id. The Ninth Circuit has held that environmental

25 law is a practice speciality that requires distinctive knowledge.

26 Love v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991). Finally, the

1  plaintiff must show that, even if the attorneys possessed

2  specialized knowledge needed for the litigation, attorneys

3  possessing these skills were not available at the statutory rate.

4  Id. at 1495.

5       **a.   Sharon Duggan**

6       Plaintiffs allege that Ms. Duggan has met the Love criteria,

7  justifying a rate increase. See 924 F.2d at 1492-93. Ms. Duggan has

8  practiced environmental law exclusively for over twenty years. See

9  Declaration of Sharon Duggan ("Duggan Decl.") ¶ 2. She has also co-

10 authored a treatise on forestry practice in California. Id. at ¶

11 9. The court previously has recognized that Ms. Duggan possesses

12 distinctive skills justifying a fee increase. See Soda Mountain

13 Wilderness Council v. Norton, No. 04-2583, slip op. at 5-6 (E.D.

14 Cal. July 21, 2006); Californians for Alternatives to Toxics v.

15 Dombeck, No. 00-0605, slip op. at 10 (E.D. Cal. Jan. 30, 2004). The

16 plaintiffs have presented evidence that Ms. Duggan's skills were

17 needed in this case and that those skills were unavailable

18 elsewhere at the statutory rate. See Declaration of David Edelson

19 ("Edelson Decl.") ¶¶ 3-4; Declaration of David Williams ("Williams

20 Decl.") ¶¶ 5, 8, 11; Declaration of Thomas Lippe ("Lippe Decl.")

21 ¶¶ 5, 6, 7; Declaration of Patricia Clary ("Clary Decl.") ¶ 3.

22 Although defendants argue that the plaintiffs have not shown what

23 efforts they took to find adequate counsel at the statutory rate,

24 the court has not found any authority, nor does defendant cite any,

25 requiring such a specific showing. Furthermore, defendants have not

26 presented the court with any evidence that such counsel was

1  available at the statutory rate.

2      Plaintiffs request this court award an hourly rate of $425 for

3  Ms. Duggan's work. The court concludes that a rate of $325 is

4  reasonable. Plaintiffs have shown that there is a "special factor"

5  here warranting an upward variation from the base statutory rate.

6  See 28 U.S.C. § 2412(d)(2)(A); Love, 924 F.2d at 1495. A rate of

7  $325 was the rate awarded Ms. Duggan by the court just last year

8  in Soda Mountain Wilderness Council, taking into account Ms.

9  Duggan's specialized skill and knowledge and the reasonable market-

10 rate for the Sacramento area. Furthermore, the plaintiffs' own

11 declarant, David Edelson, stated that he believed $325 was a

12 reasonable rate for Ms. Duggan's work. Edelson Decl. ¶ 5.

13          **b.   Julia Olson**

14     Plaintiffs allege that Ms. Olson has met the Love criteria,

15 justifying a rate increase. See 924 F.2d at 1492-93. Ms. Olson has

16 practiced environmental law exclusively for over nine years. See

17 Declaration of Julia Olson ("Olson Decl.") ¶ 3. She has

18 successfully litigated environmental suits against federal

19 defendants in the Ninth Circuit and district courts throughout the

20 state. Id. at ¶ 4. The court previously has recognized that Ms.

21 Duggan possesses distinctive skills justifying a fee increase. See

22 Californians for Alternatives to Toxics, Wilderness Watch v.

23 Troyer, No. 05-1633, slip op. at 5 (E.D. Cal. August 11, 2006);

24 Californians for Alternatives to Toxics v. Dombeck, No. 00-605,

25 slip op. at 10 (E.D. Cal. Jan. 30, 2004). The plaintiffs have

26 presented evidence that Ms. Olson's skills were needed in this case

17

1  and that those skills were unavailable elsewhere at the statutory

2  rate. See Edelson Decl. ¶¶ 3-4;Williams Decl. ¶¶ 4, 8, 11; Lippe

3  Decl. ¶¶ 5-7; Clary Decl. ¶ 3. As above, the court is not persuaded

4  by the defendants' assertion that plaintiffs have not made an

5  adequate showing of the unavailability of counsel at the statutory

6  rate.

7      Plaintiffs request this court award an hourly rate of $325 for

8  Ms. Olson's work. The court concludes that this rate is reasonable.

9  Plaintiffs have shown that there is a "special factor" here

10 warranting an upward variation from the base statutory rate. See

11 28 U.S.C. § 2412(d)(2)(A); Love, 924 F.2d at 1495. Moreover, $325

12 was the rate awarded Ms. Olson by the court last year in Troyer,

13 taking into account Ms. Duggan's specialized skill and knowledge

14 and the reasonable market-rate for the Sacramento area.

15          c.   Michael Graf

16     Plaintiffs allege that Mr. Graf has met the Love criteria,

17 justifying a rate increase. See 924 F.2d at 1492-93. Mr. Graf  has

18 practiced environmental law exclusively for ten years, and has

19 litigated in federal courts and state courts throughout California.

20 See Declaration of Michael Graf ("Graf Decl.") ¶ 2. He also

21 received a Masters degree in Environmental Science, Policy and

22 Management. Id. He has published several articles in environmental

23 law journals. Id. at ¶ 3. The plaintiffs have presented evidence

24 that Ms. Olson's skills were needed in this case and that those

25 skills were unavailable elsewhere at the statutory rate. See

26 Edelson Decl. ¶¶ 3-4; Williams Decl. ¶¶ 6, 8, 11; Lippe Decl. ¶¶

1   4-7; Declaration of Don Rivenes ("Rivenes Decl.") ¶ 4; Declaration

2   of Jason Rainey ("Rainey Decl.") ¶ 2. As above, the court is not

3   persuaded by the defendants' assertion that plaintiffs have not

4   made an adequate showing of the unavailability of counsel at the

5   statutory rate.

6       Plaintiffs seeks an hourly rate of $325 for Mr. Graf. The

7   court concludes that this rate is reasonable. Plaintiffs have shown

8   that there is a "special factor" here warranting an upward

9   variation from the base statutory rate. See 28 U.S.C. §

10  2412(d)(2)(A); Love, 924 F.2d at 1495. Furthermore, Mr. Graf's

11  experience appears on par with that of Ms. Olson's, for whom the

12  court has determined $325 is also a reasonable hourly rate.

13      **d.   Rachel Fazio**

14      Plaintiffs allege that Ms. Fazio has met the Love criteria,

15  justifying a rate increase. See 924 F.2d at 1492-93. Ms. Fazio has

16  practiced environmental law exclusively for eight years. See

17  Declaration of Rachel Fazio("Fazio Decl.") ¶ 2. She has specialized

18  in suits against the United States Forest Service alleging

19  violations of NEPA and NFMA. Id. Moreover, she was counsel on

20  Sierra Club v. Eubanks, 335 F. Supp. 2d 1070, and Earth Island

21  Institute v. United States Forest Service, 442 F.3d 1147, two cases

22  that were highly relevant to the plaintiffs' action in the present

23  case, which indicates the Ms. Fazio's particular expertise in the

24  plaintiffs' action. Id. at ¶ 3. The plaintiffs have presented

25  evidence that Ms. Fazio's skills were needed in this case and that

26  those skills were unavailable elsewhere at the statutory rate. See

19

1 Edelson Decl. ¶¶ 3-5; Williams Decl. ¶¶ 6, 8, 11; Lippe Decl. ¶¶
2 4-7; Rivenes Decl. ¶¶ 3-4; Rainey Decl. ¶ 2. As above, the court
3 is not persuaded by the defendants' assertion that plaintiffs have
4 not made an adequate showing of the unavailability of counsel at
5 the statutory rate.

6 　　　Plaintiffs seeks an hourly rate of $275 for 2005 and $300 for
7 2006 and 2007 for Ms. Fazio. The court concludes that this rate is
8 reasonable. Plaintiffs have shown that there is a "special factor"
9 here warranting an upward variation from the base statutory rate.
10 See 28 U.S.C. § 2412(d)(2)(A); Love, 924 F.2d at 1495. Although Ms.
11 Fazio has slightly less experience than plaintiffs' other counsel,
12 her very specialized expertise leads the court to conclude that
13 these rates are reasonable.

14 　　　　　**e.   Attorneys  Offering  Declarations  in  Support  of**
15 　　　　　　　**Attorney Fees**

16 　　　Plaintiffs request $1587.50 for attorney fees for David
17 Williams, David Edelson, and Tom Lippe, each of whom submitted
18 declarations in support of plaintiffs' motion. Plaintiffs request
19 an hourly fee of $425 for Mr. Williams for 1.5 hours of work, an
20 hourly fee of $350 for Mr. Edelson for 1.5 hours of work, and an
21 hourly fee of $425 for Mr. Lippe for 1 hour of work. Although the
22 declarations of these individuals may show that they have a
23 specialized knowledge of environmental law, plaintiffs have not
24 shown that such a specialized knowledge is necessary for the
25 litigation of this motion nor that there were no attorneys with
26 comparable knowledge available at the statutory rate. See 28 U.S.C.

§ 2412(d)(2)(A); <u>Love</u>, 924 F.2d at 1495. Because plaintiffs have not carried their burden on this issue, the court awards plaintiffs fees for Mr. Williams, Mr. Edelson, and Mr. Lippe's time at the statutory rate of $125 per hour.

**2. Reasonable Hours**

A court may only award attorney fees for those hours reasonably expended, excluding any "excessive, redundant, or otherwise unnecessary" hours. <u>Hensley</u>, 461 U.S. at 434. Time expended on the fee motion can be included in the award. <u>Commissioner, INS v. Jean</u>, 496 U.S. 154, 162 (1990).

Here, plaintiffs seek attorney fees for time spent preparing this motion (and reply) and their underlying action.

**a.   Fee Motion**

Plaintiffs seek to recover fees for 76.3 hours for preparing the fee request motion (46.3 hours) and reply (30 hours). The majority of this time (37 hours for the motion and 20 hours for the reply) represents time Mr. Graf spent researching and preparing both documents, and the remainder of this time represents time spent by co-counsel in reviewing, revising, and supplementing these documents. <u>See</u> Duggan Decl. Exh. B; Olson Decl. Exh. A; Fazio Decl. ¶ 5; Graf Decl. ¶ 10; Supplemental Declaration of Michael Graf ("Graf Supp. Decl.") ¶ 4; Supplemental Declaration of Rachel Fazio ("Fazio Supp. Decl.") ¶ 2.

Defendants oppose plaintiffs' recovery of fees for the entire number of hours plaintiffs request on the grounds that plaintiffs' counsel's acts were duplicative and excessive. However, the court

1  observes that plaintiffs reduced the number of hours for which they

2  seek recovery in an effort to offset possible duplication or

3  unnecessary time. See Graf Decl. ¶ 10 (counsel not requesting 30

4  hours expended on the motion for attorney fees); Graf Supp. Decl.

5  ¶ 4 (counsel not requesting 25 hours expended on the reply to

6  defendants' opposition to motion for attorney fees). Given the

7  length of both the motion and reply, as well as the complexity of

8  the law and facts discussed therein, the court is unpersuaded that

9  plaintiffs' request is unreasonable.

10     The court awards fees for the hours requested for the work of

11  Ms. Duggan, Ms. Olson, Mr. Graf, and Ms. Fazio for the motion for

12  attorney fees and reply to defendants' opposition to that motion.

13               **b.   Underlying Action**

14     The plaintiffs seek to recover fees for a total of 338.45

15  hours for time spent on the underlying action in this case. This

16  includes preparing and filing two complaints, which were later

17  consolidated into one action; preparing and attending status

18  conferences; preparing for and litigating a discovery motion;

19  reviewing expert reports, which entailed learning the scientific

20  and technical issues relevant to the action; reviewing the

21  administrative record; and preparing plaintiffs' summary judgment

22  brief. See Fazio Decl. Exh. A; Graf Decl. ¶¶ 7-9, Exh. A; Olson

23  Decl Exh. A; Duggan Decl. Exh. B.

24     Defendants contest a recovery of fees for these hours for

25  several reasons. First, as with the fee motion, defendants assert

26  that many of plaintiffs' counsels' hours were spent communicating

1  with one another and reviewing each other's drafts. This time,

2  defendants contend, resulted from "four lawyers [doing] what any

3  one could do in a fraction of the time." Defendants' Opposition at

4  36. The court, however, is unpersuaded that plaintiffs' request is

5  unreasonable as a result. The court is aware of no authority, and

6  defendants cite to none, holding that plaintiffs' representation

7  by multiple counsel is necessarily unreasonable. In a situation

8  such as this one, where two actions were consolidated, it is

9  reasonable for the attorneys familiar with the respective actions

10 to remain involved in the case and to divide tasks among

11 themselves. In fact, that is what plaintiffs' attorneys have done.

12 See Fazio Decl. ¶ 5, Exh. A; Graf Decl. ¶ 7, Exh. A; Olson Decl.

13 ¶ 7, Exh. A; Duggan Decl. Exh. B. Moreover, the plaintiffs are not

14 seeking recovery of fees for a total of 33.4 hours, in an exercise

15 of billing judgment. See Fazio Decl. Exh. A; Graf Decl. ¶ 9, Exh.

16 A; Olson Decl. Exh. A. Finally, the court is unpersuaded that

17 counsels' communications with one another represent an unreasonable

18 use of time. On the contrary, such communications are necessary for

19 counsel to coordinate their efforts and present complete and

20 accurate filings to the court. The court finds that the hours for

21 which plaintiffs seek to recover fees are not unreasonable because

22 of the coordination required among counsel.

23      Second, defendants argue that plaintiffs should not recover

24 fees for the preparation of plaintiffs' motion for summary

25 judgment, since plaintiffs never filed the motion. The court

26 disagrees. The defendants filed their motion to hold the case in

abeyance one day before the time to file summary judgment motions closed. It is not unreasonable for plaintiffs' counsel to have worked on a summary judgment motion up until that day. Furthermore, defendants' motion for abeyance was filed almost three months after the issuance of the Ninth Circuit's decision in <u>Earth Island Institute</u> and eight days after the government had filed a request for rehearing in that case. The plaintiffs cannot be faulted for continuing to prepare a summary judgment motion during this time.

Finally, the defendants assert that plaintiffs should not recover fees for time spent drafting the complaints in this case, as the complaints were unreasonably long. The court has reviewed both complaints. While the complaint filed by the Californians for Alternatives to Toxics is reasonable in its length and contents, the complaint filed by Forest Issues Group is not. The latter is forty-eight pages long, containing only ten causes of action. Several of the causes of action are described in detail over many pages, and the sections describing the factual and statutory background of the case are much more extensive than is necessary for the court in understanding the basis of the complaint. As the defendants correctly point out, this complaint more closely resembles a briefing. Plaintiffs seek to recover fees for 34.2 hours of Mr. Graf's time in drafting this complaint. Given its unreasonable length, the court awards plaintiffs only fees for 13.5 hours of Mr. Graf's time, which the amount of time Ms. Olson billed for drafting her complaint for Californians for Alternatives to Toxics.

**3. Litigation Expenses and Costs**

The EAJA provides that the prevailing party can recover litigation expenses and costs in addition to attorneys' fees.  28 U.S.C. § 2412(a)(1); § 2412(d)(1)(A).  "Expenses" includes those that are normally billed a client, such as telephone calls, postage, and attorney travel expenses. <u>International Woodowrkers, Local 3-98 v. Donovan</u>, 792 F.2d 762, 767 (9th Cir. 1986). Recovery is also permitted for the "reasonable expenses of expert witnesses" whose work is "necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(1)(A).  Plaintiff requests a total of $2,738.43 in costs and other expenses, which includes filing fees, copying, preparation of video for trial, The defendants do not contest this. Therefore the court awards plaintiffs $2,738.43 for costs and other expenses.

**IV. Conclusion**

For the foregoing reasons, the court awards plaintiff's attorneys' fees and costs in the following amounts:

| | | |
|---|---|---|
| Sharon Duggan: | 20.6 hours @ $325/hr = | $6,695.00 |
| Julia Olson: | 89.5 hours @ $325/hr = | $29,087.50 |
| Michael Graf: | 244.2 hours @ $325/hr = | $79,365.00 |
| Rachel Fazio (2005): | 8.15 hours @ $275/hr = | $2,241.25 |
| Rachel Fazio (2006-2007): | 30.7 hours @ $300/hr = | $9,210.00 |
| Dave Williams: | 1.5 hours @ $125/hr = | $187.50 |
| David Edelson: | 1.5 hours @ $125/hr = | $187.50 |
| Tom Lippe: | 1 hour @ $125/hr = | $125.00 |
| Litigation expenses and costs: | | $2,738.43 |

1     Total attorneys' fees, expenses, and costs:     $129,837.18

2     It is therefore ORDERED that plaintiff's motion for attorneys'

3  fees and costs is GRANTED in the total sum of $129,837.18.

4     IT IS SO ORDERED.

5     DATED: October 10, 2007.

6

7                         _____
                          LAWRENCE K. KARLTON
8                         SENIOR JUDGE
                          UNITED STATES DISTRICT COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26